## HAAG, Appellant, v. WARD, Receiver, et al.

**Division One, February 15, 1905.***

1. **APPELLATE JURISDICTION: Constitutional Question.** Where an instruction asked by the losing party (the holder of special tax bills) requests the court to declare that certain portions of a city ordinance which are set up as a bar to his right to recover thereon are unconstitutional and void, and said instructions are refused and he excepts and appeals, a constitutional question is raised, and the appeal is to the Supreme Court.

2. **CHARTER: Separable Constitutional Provisions: Tax-bills: Filing: Notice of Suit.** That portion of section 18 of chapter 9 of the freeholders' charter of Kansas City which requires "a written statement, showing the taxbills sued on, and when and in what court, and against whom the suit has been brought" to be filed in the office of the city treasurer, is separable from the rest of the section, the rest providing for the payment for a public improvement by special taxbills, that such bills shall be a lien on the land and that suit may be brought within two years to enforce such lien. That portion may be held to be invalid and the rest valid. The rest of the section, without such portion, was for many years a part of the statutory law of this State.

3. ———: ———: ———: ———: **Purpose of Provision.** The provision of the city charter requiring notice of suit brought to be filed with the city treasurer is in the nature of a *lis pendens* in actions affecting title to real estate; that is, it was intended to impart notice of the pendency of the suit, not to the defendant in the suit, but to third persons and title examiners.

4. ———: ———: ———: ———: **Constitutionality.** That being the purpose of the provision it did not violate that part of the Constitution (sec. 53, art. 4) which prohibits the Legislature from enacting local or special laws creating, extending or enforcing judgments, nor did it affect judicial sales of real estate. Nor did it render the charter inharmonious with the Constitution, nor did it contravene secs. 3713 and 3714, R. S. 1899.

5. ———: **Special Taxbill: Notice of Suit: Valid Provision.** So much of section 18 of article 9 of the freeholders' charter of Kansas City as requires notice of suit brought on a special tax-

---

*Note—Decided December 22, 1904; motion for rehearing filed; motion overruled February 15, 1905.

bill to be filed in the office of the city treasurer, and as requires what the notice shall contain, and as requires the city treasurer to note the filing of the notice on the record of the taxbill, is legal and constitutional. But the penalty clause of such provision is not valid.

6. ———: ———: ———: ———: Penalty: Nullifying Judgments. The charter provided that if notice of suit brought on a special taxbill were not filed with the city treasurer within a prescribed time, after suit brought, the land should "be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment." *Held*, that if the provision had been that the land should be free from the lien of the taxbill as to innocent third parties upon failure to file such notice, it would have been valid; but in attempting to nullify a judgment of a court and to provide that the land charged with a lien by a court should not be sold to satisfy the judgment of a court of competent jurisdiction, it offended against the laws and Constitution of the State. As between the holder of the taxbill and the owner of the land the jurisdiction of the court attaches as soon as the suit is filed and the summons is served.

7. ———: ———: ———: Sufficiency of Notice. Although the notice filed with the city treasurer does not state when the suit was brought, yet if it can be definitely determined from the notice that suit was begun within two years after the issue of the special taxbill (the prescribed time) the notice is sufficient, both as to the land owner and third parties.

8. SPECIAL TAXBILLS: Sidewalks: Vaults and Arches: Delegation of Authority to Engineer. The city council has no authority to delegate to the city engineer the power to determine whether existing arches over vaults under a sidewalk to be constructed are or are not of safe or durable construction, and to order or not to order the sidewalk contractor to construct or not to construct new arches over such vaults as he sees fit, and to direct the use of such materials as he may choose, and to specify the dimensions of such arches as are necessary.

9. ———: ———: ———: ———: Separable Provision. But if the section by which such powers are delegated to the city engineer is separable from the rest of the ordinance, and it may be omitted therefrom and the balance would be a complete ordinance authority for constructing the sidewalk, a taxbill, issued for the construction of the sidewalk, which contains nothing on its face to impart any suggestion that the cost of reconstructing arches over vaults is included and the property-owner fails to show that such costs were included in the taxbill, will not be invalid, simply because the ordinance contained said invalid section.

Haag v. Ward.

10. ———: ———: ———: ———: Burden: Shifting. It is not enough for the property-owner to show that a separate section in the ordinance is invalid; he must also show that some work done under the authority of that section entered into the tax-bill. But if he shows those facts the burden then shifts to the holder of the taxbill to purge it of such illegal part thereof, and to give to the court the data upon which it can separate that which was legal from that which was bad.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

REVERSED AND REMANDED.

*O. G. Long* and *Scarritt, Griffith & Jones* for appellant.

(1)  The notices filed with the city treasurer of Kansas City answer the purpose sought by the charter to be attained and were a substantial compliance with its terms.   (2)  That part of the Kansas City charter invalidating judgment liens in the absence of filing a notice of suit as therein required is unconstitutional and void for the reason that it is in conflict with section 53, article 4 of the Constitution of Missouri, and sections 3713 and 3714, Revised Statutes 1899, as an attempt to regulate the practice of the jurisdiction of courts and changing the methods of enforcing judgments and of prescribing the effect of judicial sales of real estate; and section 16, article 9 of the Constitution, which provides that the charter and amendments thereto of such cities as Kansas City shall always be in harmony with and subject to the Constitution and laws of Missouri.  Barber Asph. Pav. Co. v. Ridge, 169 Mo. 387.   The charter provision attempts to give a judgment of the circuit court a different force and effect than that prescribed by the general statutes of the State.  R. S. 1899, secs. 3713 and 3714; Badgley v. St. Louis, 149 Mo. 122.   (3)   Ordinance No. 8232 is a valid ordinance.  It is not contemplated by our juris-

prudence that the original authorizing ordinance shall state with exactness the details or extent of the improvement to be made. St. Joseph to use v. Owen, 110 Mo. 445; St. Joseph ex rel. v. Landis, 54 Mo. App. 324; Hitchcock v. Galveston, 96 U. S. 341. This ordinance is not criticised for not stating the precise width of the walk, the character or dimensions of the brick, but is directed to language which refers to the base or support for the walk where areas or vaults used by the owners of adjacent property occur. The very language of this section indicates that it was within the contemplation of the lawmakers that such support or arching should be constructed by the owners of the land who use areas or vaults, for it provides how they shall be built and then recites that "if constructed by the public contractor shall be estimated and paid for in special taxbills accordingly." There is no showing in this entire record that any such vaults or areas occurred under that part of the sidewalk embraced within the contract of the public contractor. At most the provision in reference to these supports is but a slight detail of a brick sidewalk which is wisely left to the discretion of the municipal officer having the work in charge. The substance of the improvement is a pressed brick sidewalk. The details as to the construction of its support, where unusual conditions occurred, were wisely left to the discretion of the municipal officers. Hydes v. Hoyes, 4 Bush. 464; Murray v. Tucker, 10 Bush. 240; Richardson v. Heydenfeldt, 46 Cal. 68; Stansbury v. White, 121 Cal. 433; Railroad v. Chicago, 144 Ill. 391.

*Hugh C. Ward* and *R. H. Field* for respondents.

(1) This court has no jurisdiction of the appeal and it should be transferred to the Kansas City Court of Appeals. A question which involves a construction of the Constitution and confers appellate jurisdiction

upon this court necessarily means not merely that such a question shall be raised, but also that it shall be a real and not a fictitious constitutional question, and raised by a party entitled to raise such question. Hamblin v. Western Land Co., 147 U. S. 532; Gano v. Railroad, 114 Iowa 727; Electric Co. v. Dow, 166 U. S. 489. (a) The lien of the special taxbills is wholly of statutory creation. This lien has no existence aside from its creation in and by section 18 of article 9 of the Kansas City charter. Jefferson City v. Whipple, 71 Mo. 519; Johnson v. Van Horn, 45 N. J. L. 137. (b) Neither the contractor for the work nor his assignee for the special taxbills has any right to question the validity or constitutionality of the condition or contingency in question, coupled inseparably, as it is, with the city charter creation of his alleged lien and right to enforce the same. The contractor or his assignee suing upon the special taxbills as a lien created by section 18 of article 9 of the charter, asserts the validity of every condition therein made necessary to the existence or continuance of such lien, including the provision in question, and is estopped to assert the contrary. Gano v. Railroad, 114 Iowa 713; Daniels v. Tierney, 102 U. S. 421; Railroad v. Brown, 17 Wall. 452; Railroad v. Osborne, 193 U. S. 29; Ins. Co. v. Perkins, 125 Fed. 502. (c) The provisions in section 18 of article 9 of the charter are so inseparably connected with and made dependent upon each other, that if the appellant is correct in his claim that the provision in question qualifying the continuance and duration of the lien of the special taxbills must fall as void, for conflict with the Constitution, the other provision of the same section- creating the lien of the special taxbills must fall therewith as void, because to allow the provision creating the lien to remain standing and be enforced, unqualified by the provision in question, would be contrary to the intention of the makers of the Kansas City charter. It is sometimes

permissible to reject the unauthorized and retain the
authorized provisions of a legislative act, but not
where, as here, the section of the legislative act was
manifestly intended to operate and be effective as a
whole and not in detached portions. City of Kansas
v. Cook, 69 Mo. 127; State ex rel v. Wardell, 153 Mo.
323; Utsey v. Hiott, 30 S. C. 360; Dexter v. Boston, 176
Mass. 247; Connolly v. Sewer Pipe Co., 184 U. S. 565;
Virginia Coupon Cases, 114 U. S. 304; Spraigue v.
Thompson, 118 U. S. 94. If the provisions aforesaid
of section 18 thus fall void, the alleged lien thereby
created also necessarily falls as null and void. O'Brien
v. Wheelock, 184 U. S. 450; State ex rel. v. Railroad,
74 Mo. 163; Brown v. Denver, 7 Col. 305; Anderson
v. Hill, 54 Mich. 478; Ulman v. Mayor, 72 Md. 587;
Stuart v. Palmer, 74 N. Y. 183; Deitz v. City, 91 Wis.
422; State v. Thomas, 138 Mo. 99. It is a statutory
condition to any right of appeal that the appellant must
be aggrieved by the decision and judgment appealed
from. R. S. 1899, sec. 806. The appellant could not
be aggrieved by the circuit court's refusal of his declar-
ations of law to the effect that the charter provision in
question was unconstitutional. For if the law be as
declared in these refused declarations asked by appel-
lant, no lien of the special taxbills could remain, be-
cause in that event the provision of this section of the
charter making the taxbills a lien would also inevitably
fall with the provision in question. (2) The notices
of this suit, filed with the city treasurer, did not affirm-
atively or otherwise state when this suit was brought;
hence they could not be held a compliance with the
provision of the Kansas City charter. (3) The or-
dinance ordering the sidewalk in question was *ultra
vires* and void, because it did not prescribe, but dele-
gated to the city engineer to decide, the manner and
extent of the work. Lundberg v. Chicago, 183 Ill. 572;
Grant v. Barber, 135 Cal. 188; Hawthorne v. East Port-
land, 13 Ore. 271; State ex rel. v. Mayor, 38 N. J.

L. 411; State v. Clark, 69 Conn. 371. It is a begging of the question to say "there is no showing in the entire record that any such vaults occurred under that part of the sidewalk embraced within the contract." Neither is there any showing that there were no such vaults or areas "under that part of the sidewalk within the contract." If the objection to section 2 could be obviated by testimony, the burden to do so was surely upon the appellant. This section of the ordinance making provision for areas or vaults, etc., is at least prima facie evidence of their presence in some part of the sidewalk ordered. The sidewalk was laid thirteen blocks, a distance of seven-eighths of a mile, on both sides of the street, lined with residences and business houses. But the validity of the ordinance is not to be judged by what was done, or necessary to be done, but it is so determined by what the ordinance authorized to be done thereunder. It is not required to defeat an unauthorized city ordinance to prove that the illegal thing therein authorized was done. Brown v. Denver, 7 Col. 305; Dexter v. Boston, 176 Mass. 247; Colon v. Lisk, 153 N. Y. 194; St. Louis v. Allen, 53 Mo. 55; Collins v. New Hampshire, 171 U. S. 34; Minnesota v. Barber, 136 U. S. 313; Mayor v. Reynolds, 20 Md. 1; Whitesides v. United States, 93 U. S. 257; Hawkins v. United States, 96 U. S. 691; King-Hill Brick Mfg. Co. v. Hamilton, 51 Mo. App. 120; Trenton v. Collier, 68 Mo. App. 483; Piedmont Paving Co. v. Allman, 136 Cal. 88; Inge v. Board of Public Works, 135 Ala. 200. (4) There is no principle of law on which any life or efficiency or right of action can be given to such void proceedings. Certainly no mere silence or inaction of an owner of lands as may be imagined during that time, could be made the basis of an estoppel to attack or resist the taxbills in question. Perkinson v. McGraff, 9 Mo. App. 26; Keane v. Klausman, 21 Mo. App. 485; Galbraith v. Newton, 20 Mo. App. 380; St. Joseph v. Dillon, 61 Mo. App. 317; State ex rel. v.

Railroad, 74 Mo. 163; Verdin v. St. Louis, 131 Mo. 98; Wood v. Kansas City, 162 Mo. 389; Batty v. City of Hastings, 63 Neb. 31; Hawthorne v. East Portland, 13 Ore. 282; Smith v. Minto, 30 Ore. 351; Town of Clay City v. Bryson, 66 N. E. 498; Steickert v. East Saginaw, 22 Mich. 111; Winnebago F. & M. Co. v. Fond du Lac Co., 113 Wis. 72; Mulligan v. Smith, 59 Cal. 234; Keese v. Denver, 10 Col. 122.

MARSHALL, J.—This is a suit to enforce two certain special taxbills aggregating $152.92, for the construction of a brick sidewalk on Nineteenth street, between Main street and Tracy avenue in Kansas City, pursuant to Ordinance No. 8232, of that city, approved April 14, 1897.

The defendants are Hugh C. Ward, who was appointed receiver of the property by the United States Circuit Court for the Western District of Missouri, and who is sued herein by leave of that court, and Julia Mastin and Thomas H. Mastin and Elizabeth, his wife, who claim to own the property.

The suit was begun on September 21, 1899, before M. A. Pursley, a justice of the peace for the seventh district, Kaw township, Jackson county, Missouri. The summons was returnable October 20, 1899, and was duly served upon all of the defendants. The defendants made default and judgment was rendered for the plaintiff establishing the lien. Ward alone appealed from that judgment. In the circuit court the plaintiff filed an amended petition, which recited and set out the taxbills; their issuance to the contractor and the assignment thereof to the plaintiff; the fact that Ward was receiver and the leave of the Federal court to sue him; the claim of the other defendants to the land, and prayed for a judgment *in rem* against the land, and that it be sold to satisfy the lien. The defendants filed no written pleading.

At the trial the plaintiff offered the taxbills in

evidence which, under section 18 of article 9 of the charter of Kansas City, were prima facie evidence of the facts therein recited, and also offered the assignment of the taxbills to the plaintiff, together with oral proof that the plaintiff had purchased the bills. The appointment of Ward as receiver, and the leave of the Federal court to bring this suit were then admitted by the parties. Thereupon the plaintiff rested.

The defendants then offered in evidence the ordinance under which the work was done, being numbered 8232. The first section of the ordinance authorized the construction of brick sidewalks on both sides of Nineteenth street from Main street to Tracy avenue (with certain exceptions), which was shown by the oral testimony to be thirteen blocks in length, "according to specifications for first-class sidewalks, approved February 18, 1895, and on file in the office of said board."

The principal objection in this case is as to section two of the ordinance, which is as follows:

"Section 2. Where areas or vaults occur, which have not been covered or roofed over with suitable brick, concrete or other necessary arches, resting on masonry or metal supports, or by some other equally safe or durable construction, then such arching or curbing as is found necessary for the support of the walk ordered to be built shall be furnished and constructed in accordance with special plans and specifications for the same, to be furnished or approved by the city engineer. Such special construction may include the arching and covering over all of the area or vault space included between the curbing and street lines, and the making thereof shall be deemed a necessary part of the construction of the sidewalks by this ordinance ordered to be built, and, if constructed by the public contractor, shall be estimated and paid for in special taxbills accordingly."

Section five of the ordinance provided that so much of said work as may not be done by the owners

of the property liable to be charged with the cost thereof, should be done by the contractor, and should be paid for by special taxbills.

Section six permitted such owners to have work done by private contract, but required them to get a copy of the specifications and a permit from the city engineer's office.

The defendants then offered in evidence two notices, which were alike except as to the amount of the taxbill and the property affected, and one of which was as follows:

"Kansas City, Mo., September 20, 1899.
"To Hugh C. Ward, Receiver, Julia Mastin, Thomas H. Mastin and all others interested:

"Take notice that the undersigned, George Haag, is the owner of taxbill No. 1, issued under Ordinance 8232, against Lot 4, Block 32, Mastin's Subdivision, for the sum of $72.10, that he has brought suit to collect the same before M. A. Pursley, justice of the peace of Kaw township, Jackson county, Missouri, and that the same will be heard before said justice on the twentieth day of October, 1899, and that he has joined as defendants therein Hugh C. Ward, receiver, and Julia Mastin and Thomas H. Mastin.

"GEORGE HAAG,
"By O. G. LONG,
"His Attorney."

On the back are the following endorsements:

"Vol. 13, page 444.   Bill 1, Ord. 8232.
"Geo. Haag.
                vs.
"Hugh C. Ward, Rec. et al.,
"Notice filed Sept. 21st, '99.   At 3:30 p. m.
"J. SCOTT HARRISON, JR.,
"City Treasurer."

The defendants further showed that said notices were filed with the city treasurer on September 21,

1899, on the same day that this suit was instituted and immediately after the suit was begun.

This was all the evidence adduced in the case.

The plaintiff then asked the court to declare the law to be as follows:

"1. The court declares the law to be that on the pleadings and evidence the finding and judgment shall be for the plaintiff.

"2. The court declares the law to be that the part of section 18, chapter 9, of the charter of Kansas City, providing that plaintiff, in suits on special taxbills, shall file a written statement with the city treasurer of certain facts, and that 'if the plaintiff or plaintiffs in such suit shall fail to file such statements within the time above limited, the land described in the taxbill sued on shall be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment,' is unconstitutional and void, as being in conflict with sections 3713 and 3714 of the Revised Statutes of 1899, and with section 16 of article 9 of the Constitution of the State of Missouri, and especially with that part thereof which requires that the charters of cities organized under the Constitution of the State shall be consistent with and subject to the Constitution and laws of this State, and shall always be in harmony with and subject to the Constitution and laws.

"3. The court declares the law to be that the part of section 18, chapter 9, of the charter of Kansas City, providing that plaintiff, in suits on special taxbills, shall file a written statement with the city treasurer of certain facts, and that 'if the plaintiff or plaintiffs in such suit shall fail to file such statement within the time above limited the land described in the taxbill sued on shall be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment,' is in conflict with section 53 of article 4 of the Constitu-

tion of Missouri, and that part thereof which prohibits the legislative authorities of the State ,from passing any local or special laws authorizing the creation, extension or impairing of liens, regulating the practice or jurisdiction of proceedings or the enforcement of judgments or prescribing the effects of judicial sales of real estate, and is void."

The court refused to give said instructions and the plaintiff excepted. Thereupon, the court entered judgment for the defendants, and plaintiff appealed.

## I.

The first contested question in this case is as to the appellate jurisdiction of this court in this case.

The respondents heretofore moved to remand this case to the Kansas City Court of Appeals, on the ground that appellate jurisdiction herein is vested in that court, but this court overruled the motion. Ordinarily, the ruling on a motion forecloses the matter, but as no written opinion was rendered on that ruling, it is deemed proper here to say that a constitutional question was properly raised in the trial of this case in the circuit court in the second and third instructions asked by the plaintiff. The trial court refused those instructions, thereby deciding the constitutional question against the plaintiff. The plaintiff was the losing party in the circuit court, and properly saved exceptions to the ruling of the trial court upon the constitutional question raised. This, therefore, gave this court appellate jurisdiction of the case. [Brown v. Railroad, 175 Mo. 185.]

## II.

The constitutional question in this case is, that so much of section 18 of chapter 9 of the charter of Kansas City as requires the plaintiff in a suit to enforce a special taxbill to file a written statement with the city treasurer "showing the taxbills sued on, when and in what court, and against whom the said suit has been

brought," is unconstitutional and void, first, because it violates sections 3713 and 3714, Revised Statutes 1899, and section 16 of article 9 of the Constitution; and, second, because it violates section 53, article 4, of the Constitution.

The answer of the defendant to this contention is, first, that said part of said section is an inseparable part of the enactment, and that said section is the only legal basis for the taxbill, and hence as the plaintiff has no right of action except as it is conferred by that section, the plaintiff cannot be heard to challenge the constitutionality of any part of that section, for it would thereby undermine and destroy the foundation upon which the action rested; and, second, that as the framers of the charter conferred the right, they had a right to limit it by such terms or conditions as they saw fit, and that they would not have conferred the right except upon such terms and, therefore, the terms are not separable from the right, and hence the whole section must either stand or fall together.

The section of the charter of Kansas City here involved is very lengthy. It is the provision of the charter which relates to the enforcement of special taxbills issued for the payment of public improvements. So much of that section as is pertinent to the discussion in hand is as follows:

"Sec. 18. . . . Every special taxbill issued under the provisions of this article shall be a lien upon the land described therein, upon the date of the receipt to the board of public works therefor, and such lien shall continue for two years thereafter, but no longer, except as in this article otherwise provided, unless suit shall be brought to collect the same within two years from the issue thereof, in which case the lien shall continue until the determination of the legal proceedings to collect the same, including any sale of the property charged; provided, however, that if

such suit shall be brought within the two years the plaintiff or plaintiffs therein shall at the time or within ten days after the commencement of suit, and not later than thirty days after the end of the two years, in person or by attorney or agent, file in the office of the city treasurer a written statement, showing the taxbills sued on, and when and in what court, and against whom the said suit has been brought. The city treasurer shall, immediately after the filing of any such statement, note on the record of such taxbill the time of filing such statement and the substance of the same. If the plaintiff or plaintiffs in such suit shall fail to file such statement within the time above limited the land described in the taxbill sued on shall be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment.''

The plaintiff's contention is that the limitations of the proviso relating to the filing of the notice of the suit are separable from the right to a lien conferred by the section, and that the proviso as to notice is unconstitutional and void for the reasons above stated, and, without this, that the notice is a sufficient compliance with the charter provision.

The proviso in question first appeared in the freeholders' charter adopted by Kansas City in 1889. Prior to that time the section of the charter of Kansas City provided by the General Assembly of the State, relating to special taxbills, was substantially the same as the portion of section 18 above quoted, which precedes the proviso. [Laws 1875, p. 252, art. 8, sec. 4.]

In other words, prior to 1889 Kansas City existed under a charter enacted by the General Assembly of the State, and that charter provided that special taxbills in payment of benefits for public improvements, should be a special lien upon the land for two years from the date of the taxbill, and if suit was brought on the taxbill before the expiration of the two

years the lien was continued until the expiration of the legal proceedings to collect the same, including the sale of the property charged.

The provision was substantially the same as is provided in similar cases by the charter of St. Louis (secs. 25 and 26, art. 6, charter St. Louis, R. S. 1899, pp. 2513 and 2514), and also the same as is provided for cities of the first class by the general laws of the State (R. S. 1899, ch. 91, art. 2, secs. 5399 and 5400).

The proviso in section 18 of chapter 9 of the charter of Kansas City, above quoted, was put into the freeholders' charter of 1889, when that city adopted its charter as authorized by section 16 of article 9 of the Constitution.

The fact, therefore, is that the law relating to tax-bills for public improvements in Kansas City, existed, from 1853 to 1889, from the first to the last legislative charters granted to that city, without the proviso under consideration. The fact is, also, that public improvements can be made and are made in other parts of the State under laws providing for their payment in special taxbills, without any such provision as is contained in the proviso under consideration. It follows, therefore, that the proviso aforesaid is separable from the portions of the section which precede it, and it has no connection with what follows in the section. The section would afford a complete remedy for the collection of the special taxbill, as between the owner thereof and the owner of the property, if the proviso had never been put into the section. The proviso is, therefore, clearly separable from the balance of the section. Hence the proviso may or may not be unconstitutional and void, without impairing the force of the balance of the section, as to which there is no room for debate upon its constitutionality. [County Court of St. L. Co. v. Griswold, 58 Mo. l. c. 199.]

Speaking of statutes that are constitutional in part and unconstitutional in other parts, Judge COOLEY,

in his invaluable work on Constitutional Limitations (7 Ed.), p. 246 et seq., says:

"It will sometimes be found that an act of the Legislature is opposed in some of its provisions to the Constitution, while others, standing by themselves, would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it, but insufficient for others. In any such case, the portion which conflicts with the Constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional because it is not within the scope of legislative authority; it may either propose to accomplish something prohibited by the Constitution, or to accomplish some lawful, and even laudable object, by means repugnant to the Constitution of the United States or of the State. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the

legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.'' The history of the prior state of the law under the charters of Kansas City before the adoption of the freeholders' charter of 1889, and the state of the law in other parts of the State, in reference to having public improvements paid for by special taxbills, clearly and conclusively demonstrates that the freeholders did not intend to tie the right to pay for public improvements with special taxbills to the proviso in question, so as

to forego the one if they were denied the right to constitutionally enact the other.  In other words, the proviso is not so interwoven with the system as to show that the charter framers would not have enacted the section unless the proviso was to be allowed to stand with it and as a part of it.

It follows that the proviso is legally separable from the balance of the section, and that its constitutionality or unconstitutionality in no manner vitiates the other parts of the section.

This being true, it also follows that the plaintiff can be heard to claim the benefits of the law as far as it is constitutionally a complete law, capable of enforcement, and can at the same time question the constitutionality of the other, separable part of the law.

An analysis of the proviso clearly shows the purpose the lawmakers had in mind when they put it into the law, and likewise shows that they intended to punish any one who failed to comply with its terms.

The purpose of the proviso was to give notice of the pendency of the suit.  The notice to be filed with the city treasurer was in nature of a *lis pendens,* provided for by section 4257, Revised Statutes 1899, in actions affecting real estate.  It was not intended to impart any notice of the suit to the defendant in the action, for the summons sufficiently informs him of the suit, its nature, when it was begun and when it was to be tried.  The manifest purpose of the notice was to inform third persons and title examiners of the fact that a suit to enforce the special taxbill had been commenced, and to collate all the information relating to the taxbill at the same place, and in the same book, and in the same connection in the same book, so that any one desiring to investigate the title to the real estate or to buy or deal in it, could ascertain at the city treasurer's office all the information pertinent to the inquiry or title, without having to search the records of all the courts of the Commonwealth in which any

suit relating to the collection of the taxbills might be brought. The purpose of the proviso was good and did not violate any law of the State, nor did it in this respect contravene the Constitution. The charter framers had a right to impose the duty of filing the notice upon the owner of the taxbill, and the burden went with the privilege. [State v. Julow, 129 Mo. l. c. 177.] The requirement of a notice did not violate the provisions of section 53 of article 4, which prohibits the Legislature from enacting local or special laws creating, extending or impairing liens, regulating the practice in the courts or enforcing judgments, nor did it affect judicial sales of real estate. Neither did it violate sections 3713 or 3714, Revised Statutes 1899, nor section 16 of article 9 of the Constitution, for it did not conflict with any requirement of any law of the State, nor did it render the charter in that respect in-harmonious with the Constitution.

It was a wise and legal provision so far as it re-quires a notice to be given. The requirement of the proviso that the notice should state *when* the suit on the taxbill was begun, was also wise and lawful, for it at once afforded the very material information whether or not the suit was begun before the two years provided for the lien had expired, and, therefore, enabled third persons to see from the records in the city treasurer's office whether or not the owner of the special taxbill had taken the necessary steps to extend the lien of the taxbill beyond the two years.

So much, therefore, of the proviso as requires the notice to be so filed, and as prescribes what the notice shall state, and as requires the city treasurer to note the filing of the notice on the record of the taxbill, is clearly legal and constitutional.

The whole trouble arises upon the penalty which the proviso attempts to inflict upon one who fails to file such a notice. The proviso concludes as follows: "If the plaintiff or plaintiffs in such suit shall fail to

file such statement within the time above limited the land described in the taxbill sued on shall be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment.''

If the provision had been that the land should be free from the lien of the taxbill as to third innocent purchasers for value, and had left out the words ''and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment,'' the purpose of requiring the notice would have been fully effectuated, and a full and adequate punishment for failure to give the notice would have been provided. But when the charter framers undertook to provide that the lien of a judgment of a court should be nullified or to provide that the land charged with a lien by a court should not be sold to satisfy the judgment of a court of competent jurisdiction, which had acquired jurisdiction of the subject-matter and of the parties in the manner prescribed therefor by law, they exceeded their powers, and offended against the laws and the Constitution of this State.

As between the holder of the taxbill and the owner of the land charged with the special taxbill, the jurisdiction of the court attached as soon as the suit was filed and the summons was served. The notice was not required to be filed until the time the suit was commenced, or it might be filed within ten days after the suit was commenced, and not later than thirty days after the end of the two years. So that so far as the parties to the action were concerned, the proviso related to something to be done after the matter had gotten into court, and prescribed a duty or act that was not essential to the prosecution of the action, and was not required to be done by the general laws of the State as a part of the necessary procedure in the case.

It is the duty of the court to enforce so much of the proviso as is separable, legal and constitutional,

and to declare void so much thereof as is illegal and unconstitutional.

The portion of the proviso which requires the written statement to be filed, so as to give notice to third persons that the lien of the taxbill has been extended beyond the two years, is clearly separable from the concluding sentence of the proviso, which imposes a penalty for failure to file the notice. And it cannot be successfully contended that the charter framers would not have adopted the requirement for notice unless they also had power to impose the penalty, nor that the requirement would be futile and incapable of enforcement unless the penalty was allowed to stand. For without the penalty prescribed by the proviso, a penalty would still exist for failure to file the notice, in this, that the notice would then be like the ordinary *lis pendens* and the State statute prescribes no penalty for failure to file the *lis pendens,* but the penalty for failure to file it lies in the fact that if no notice or *lis pendens* is filed and if third persons purchase the land pending the suit, they take a good title which is not affected by the subsequent judgment. This consequence affords sufficient inducement to the plaintiff in a suit upon the taxbill to obey the mandate of the proviso and to file the notice. And, as hereinbefore shown, the only object of the notice is to give notice to third persons, and not to the owner of the property, who has been summoned in the suit on the taxbill and is in court. This being true the proviso as to notice is a wise and legal provision and carries with it the same penalties that follow from not filing an ordinary *lis pendens,* and the consequences of a failure to file a *lis pendens* have been found by experience to be sufficient to prompt the filing of the same, for no one except the plaintiff is hurt by a failure to file the same.

It follows, therefore, that all of the proviso is valid except the part which undertakes to impose the penalty for a failure to file the notice, but that the last

sentence of the proviso, to-wit, ''If the plaintiff or plaintiffs in such suit shall fail to file such statement within the time above limited the land described in the taxbill sued on shall be free from the lien of the taxbill and of any judgment in such suit, no matter when rendered, and shall not be sold in satisfaction of any such judgment,'' is unconstitutional and void.

## II.

The written statement filed in this case complies with the requirements of the proviso, in all respects, except one, and that is, it does not state *when* the suit was commenced, and, as hereinbefore pointed out, that is a material and necessary fact to be imparted by the face of the record, for it at once enables third persons to determine from the record in the city treasurer's office whether or not the suit was commenced before the expiration of the two-year lien. Instead of stating when the suit was commenced, the notice in this case stated that the case would be heard on October 20, 1899. The taxbill was issued on October 2, 1897. The two-year lien would therefore expire on October 2, 1899. The notice of suit was filed on September 21, 1899. At that time the two-year lien had not expired. The date of the issuance of the taxbill appeared on the record in the city treasurer's office, as did also the date of the filing of the notice of the suit. The notice stated that suit ''has been brought.'' That is, the record showed that the suit had been commenced before the filing of the notice on September 21, 1899. These facts, therefore, showed to all persons that the suit had been commenced before the expiration of the two-year lien, and this is the fact which the law intended should be shown to exist. The notice in this case, therefore, was a substantial compliance with the rationale of the proviso. If the notice in this case had not been filed until after October 2, 1899, it would not have been a compliance with the proviso, for then the fact would not have appeared on the face of the records of the city treasurer's

office that the suit had been commenced prior to the
expiration of the two-year lien, and third persons were
not required to look beyond that record to ascertain
that fact. The statement that the case would be heard
on October 20, 1899, did not supply that information,
for a suit might be heard on October 20, 1899, which
was instituted after October 2, 1899.

The sum of the matter, therefore, is that the notice
in this case was a sufficient notice to third persons, and
that the notice was not intended for the defendant, but
only for third persons. In addition to which no rights
of third persons are involved in this case. For these
reasons, the plaintiff was not barred of his recovery
in this case by the proviso, nor by any infirmity in the
notice.

### III.

The defendants next contend that Ordinance No.
8232, under which the work was done and which is the
basis of the special taxbill, is invalid and void.

The gist of the contention is that it is void because
section two of the ordinance provides that where areas
or vaults have not been roofed over by arches of
safe and durable construction, then such arching as
is found necessary for the support of the sidewalk shall
be built by the sidewalk contractor upon special plans
and specifications to be furnished or approved by the
city engineer, and the work of so doing shall be deemed
a necessary part of the contract work; and that this
provision contravenes the city charter and especially
violates section 2 of article 9 of the charter of 1889,
which vests in the common council the power to order
such work to be done, and requires the ordinance au-
thorizing the work to state the extent and dimensions
of the work and the materials to be used and the man-
ner of the doing of the work, and, therefore, section
two of the ordinance is void, first, because it leaves it
to the city engineer to determine whether existing
arches over vaults under the sidewalk are or are not

of safe or durable construction, and to order or not to order the sidewalk contractor to construct or not to construct new arches, upon such plans as he sees fit; and, second, because it does not specify the extent or dimensions of such arches as are necessary, nor does it prescribe the materials to be used or the manner of doing the work.

Section two of the ordinance is justly obnoxious to the objections urged against it, and is clearly illegal. The common council could not delegate such power to the city engineer. [Ruggles v. Collier, 43 Mo. 353; St. Louis to use v. Clemens, 52 Mo. 133; Welty on Assessments, sec. 282, n. 6 and 7.]

But the question in this case is whether the invalidity of section two of the ordinance makes the whole ordinance void, and whether the taxbill is void because of the invalidity of section two.

Section two is clearly separable from the balance of the ordinance. Without that section, there would be a complete ordinance authority for constructing the sidewalk, and such ordinance so remaining would fully measure up to the requirements of the charter. The primary purpose of the ordinance was to construct the sidewalk. If there were no vaults under the sidewalk or if no vaults that were under the sidewalk were reconstructed, the sidewalk could be legally constructed according to the remaining part of the ordinance and section two would cut no figure in the case.

There is nothing upon the face of the taxbill that imparts the slightest suggestion that the cost of reconstructing arches over vaults is included in the taxbill. The bill on its face recites that it is a special tax "for constructing pressed brick sidewalks," and nothing is said about reconstructing arches over vaults. Counsel concede that there is no evidence in the record showing that any such arches were so reconstructed, but they each claim that the burden of showing or negativing that fact was upon the other. The plaintiff contends

that as the defense was the invalidity of section two, the burden was upon the defendants to also show that some part of the taxbill was invalid because it represented the cost of constructing such arches; and the defendants claim that as section two is invalid it devolved upon the plaintiff to show that no part of the cost of constructing such arches entered into the taxbill. The position of the plaintiff is correct. For it is not enough for the defendants to show the invalidity of section two. They must also show that the cost of some work done under the authority of section two entered into and is included in the taxbill. Otherwise the invalidity of section two would have no bearing upon the case, and the defendants would not be damaged.

Should the defendants show that any such work, of reconstructing arches, was done by the contractor in this case, and that the cost thereof was included in the taxbill, the burden would then shift to the plaintiff to purge the taxbill of such illegal part thereof, and to give the court the data and facts upon which the court could separate that which was bad from that which was good. And if this was shown it would be the duty of the court to render judgment for that which was legal and proper and to cull out from the taxbill the part which represented the work done under section two. [Wooten v. Walters, 110 N. C. 251; Mills v. Charleton, 29 Wis. 400; Himmelmann v. Satterlee, 50 Cal. 70.]

This rule applies in this case because the work contemplated by section two is of an entirely different character from the work to be done under the balance of the ordinance, and the two are therefore separable and the cost of each easily separated from the cost of the other.

The judgment of the circuit court must, therefore, be reversed and the cause remanded, to be proceeded with in accordance herewith.

All concur, except *Robinson, J.,* absent.